# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| PRO DRIVE OUTBOARDS, LLC | CIVIL ACTION NO. 6:18-1241 |
| | JUDGE JUNEAU |
| versus | |
| CRUZANI, INC., F/K/A US HIGHLAND, INC., ET AL. | MAG. JUDGE WHITEHURST |

## MEMORANDUM RULING AND ORDER

Pending before the Court is the Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) [Rec. Doc. 16], filed by the defendant, U.S. Highland, Inc. ("Highland"). Plaintiff Pro-Drive Outboards, LLC ("Pro-Drive") filed an opposition brief [Rec. Doc. 23]; Highland filed a reply brief [Rec. Doc. 36], and the plaintiff filed a sur-reply brief [Rec. Doc. 39]. After considering the applicable law and the briefs of the parties, the Court will grant the motion to transfer.

### *I. Factual Background*

This action arises out of a business deal between Pro-Drive and Highland. Pro-Drive is a Louisiana limited liability company, while Highland (now known as Cruzani, Inc), is a Nevada corporation. At the time of the event giving rise to this litigation, however, Highland was an Oklahoma corporation. Pro-Drive is the manufacturer of the first ever shallow water outboard motor built for hunting, fishing, and commercial purposes. *R. 1, at ¶9.* According to the Complaint, Pro-

Drive outboard motors utilize air-cooled engines because air-cooled engines allow the outboard motors to be more efficiently operated and/or less subject to breakdown when the outboard motors are operated in very shallow water and in swampy conditions. *Id., at ¶10.* Pro-Drive utilizes air-cooled engines supplied by third-party manufacturers. Accordingly, in September 2009, Pro-Drive contacted Highland, operating at that time in Sweden, about purchasing Highland engines for use on Pro-Drive products. *Id., at ¶13.*

Negotiations between the two parties continued until November 2009, when Highland sent Pro-Drive a proposal for a prototyping and licensing agreement between Pro-Drive and Highland. *Id., at ¶25.* The prototyping proposal was for the creation of a platform for a Highland engine and a hydraulic system. *Id.* The prototyping fee was quoted at $126,000.00 and the licensing fee was quoted as $200,000.00. *Id.* On January 12, 2010, Pro-Drive and Highland signed an Exclusive Distribution Agreement for Shallow Water Marine Applications ("the Distribution Agreement"). *Id., at ¶30.* In the Distribution Agreement, Highland represented itself as an Oklahoma corporation and a subsidiary of Highland Group AP, a Swedish company. *Id.* On January 12, 2010, Pro-Drive transferred $126,000.00 from its bank account into Highland's bank account. Four payments of $50,000.00 each followed, one each of the following months. *Id., at ¶31*

The Distribution Agreement contains the following language:

> Governing Law: Venue: Arbitration. This agreement shall be governed by, and construed according with, the laws of the State of Oklahoma. Actions and proceedings litigated in connection with this Agreement, if any, shall be conducted exclusively in the state and federal courts located in the State of Oklahoma.[1]

Over the next two years, the parties discussed, planned, and tested various engines and platforms, none of which met the specifications that were initially agreed upon, and none of which resulted in an engine that could be used by Pro-Drive in its watercraft. During that time period, the three Highland principals that Pro-Drive had been dealing were killed in a helicopter accident, and Highland relocated its business venture with new principals. *Id., at ¶42.* Despite having paid $326,000.00 up front, Pro-Drive alleges it never received the engine for which it contracted with Highland.

On September 21, 2018, Pro-Drive filed the instant matter in this Court, alleging claims for breach of contract, detrimental reliance, and bad faith on the part of Highland. In its complaint, Pro-Drive sued Highland and John R. Fitzpatrick, III, who became CEO of Highland after the initial principals died. Pro-Drive alleges that venue is proper in this district because all or a substantial part of the activities in the complaint were carried out in this district and because the defendants transacted business in this district.

---

1 *See* "Exclusive Distribution Agreement for Shallow Water Marine Applications," attached as Exhibit 1 to Highland's motion to transfer, *R. 16-3*.

On March 3, 2019, Highland filed the instant motion to transfer venue, as well as a Motion to Dismiss for Failure to State a Claim [Rec. Doc. 17], which argues that, under Oklahoma law, the plaintiff's claims are time-barred. The Court first considers the motion to transfer, and because it concludes that the motion should be granted, the motion to dismiss is not addressed in this Ruling.

## II. Law and Analysis

*A. Standard for Change of Venue under 28 U.S.C. § 1404(a)*

Under 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses [and] in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. §1404(a). A defendant seeking a transfer of venue must demonstrate that the plaintiff could have originally brought the action in the transferee court. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir.2004) ("*Volkswagen I*") ("In applying the provisions of § 1404(a), we have suggested that the first determination to be made is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."). After this initial showing has been made, the defendant must then demonstrate "good cause" why the case should be transferred. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir.2008) ("*Volkswagen II*"). A defendant can carry this burden by showing, through the relevant private and public interest factors

enunciated in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 505, 508 (1947), that the transferee district is a more convenient venue. *Volkswagen II*, 545 F.3d at 315.

The private interest factors to be considered are: (1) the relative ease of access to sources of proof; (2) the cost of attendance for willing witnesses; and (3) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Volkswagen I, 371 F.3d at 203*. The relevant public interest factors are: (1) the administrative difficulties created by court congestion; and (2) the interest in having localized controversies decided at home. *Id*. The above-listed factors are not necessarily exhaustive or exclusive, and none should be given dispositive weight. *Volkswagen II*, 545 F.3d at 315.

When the parties hold a valid forum selection clause, the Fifth Circuit – guided by the Supreme Court's decision in *Atlantic Marine Constr. Co. v. United States Dist. Court*, 134 S.Ct. 568 (2013) – has held that the analysis is altered, to wit:

> As is most relevant here, the district court cannot independently weigh the parties' private interests, but must deem such interests to weigh in favor of the preselected forum, the parties having struck that balance by their selection contract. Accordingly, only the public-interests may weigh against transfer, and "[b]ecause those factors will rarely defeat a transfer motion, the practical result is that the forum-selection clauses should control except in unusual cases."
>
> [ . . . ]
>
> For cases where all parties signed a forum selection contract, the analysis is easy: except in a truly exceptional case, the contract controls.

*In re Rolls Royce Corp.*, 775 F.3d 671, 678–79 (5th Cir. 2014).

B.  The Parties' Contentions

Pro-Drive concedes that any claims arising under the Distribution Agreement are, indeed, to be tried in Oklahoma under the terms of the Agreement's forum selection clause.[2] Pro-Drive contends, however, that this matter cannot be transferred because the forum selection clause applies *only* to the claims arising under the parties' Distribution Agreement, and that the majority of the agreements between the parties were the subject of oral contracts. Pro-Drive specifically asserts "[m]ost, though not all, of the contractual arrangements between the parties giving rise to the allegations of Pro-Drive's Complaint lack any forum selection clause, since they were not reduced to writing." *R. 23, at p. 2*. Pro-Drive characterizes these oral contracts as "any dealings beyond marketing and sale of imaginary Highland engines." *Id.* Pro-Drive then argues that transfer of only a portion of the its claims would be unreasonable and prejudicial.

---

2 To the extent that Pro-Drive argues the Distribution Agreement should not be considered by the Court because it was not attached to the Complaint, the Court finds this argument unpersuasive. Pro-Drive cites this Court to no cases that hold that the Court cannot consider materials outside of the complaint when adjudicating a motion to transfer. Indeed, this Court found jurisprudence that stands for the proposition that the Court can consider such documents when deciding a motion to transfer. *See, e.g., Knaps v. First Allied Corp.*, 2013 WL 12123521 at *8 (S.D. Miss. 2013) (court refused to strike affidavits that were submitted in connection with a motion to transfer). Furthermore, were it required to so find, this Court concludes the Distribution Agreement has been incorporated into the plaintiff's Complaint, as the Agreement is referenced throughout and is central to the plaintiff's claims in this matter. *See, e.g., Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claims).

Highland disputes the foregoing characterization of the claims as set forth in the Complaint, arguing Pro-Drive has asserted only claims for breach of the Distribution Agreement, bad faith arising therefrom, and detrimental reliance, and that all of the parties' dealings fall under the purview of the Distribution Agreement and constitute alleged breaches of that Agreement. Thus, Highland argues all of Pro-Drive's claims are governed by the forum selection clause, and this matter must be transferred to Oklahoma.

C.  *Analysis*

After a review of Pro-Drive's Complaint, the briefs of the parties, and the applicable law, the undersigned concludes all of Pro-Drive's claims arise *in connection with* the Distribution Agreement. The Distribution Agreement makes clear that the purpose of the agreement was for Pro-Drive to market, distribute, and sell the Highland 950cc V-Twin Engines, which included 750cc to 1200cc V-Twin engines. The Agreement further states:

> The Manufacturer [Highland] shall provide technical developmental assistance for a minimum of three years after the release of any new version of the 950 Engine provided to the Distributor for general sales. The Manufacturer shall appoint one or more representatives to provide this assistance who shall be available within a reasonable time period (no more than five business days). Compensation for this service shall be billable at a rate of $175 per hour per person plus reasonable expenses.

The Agreement further provides:

> This Agreement constitutes and represents the entire agreement of the parties with respect to the subject matter hereof, and all other prior agreements, covenants, promises and conditions, verbal or written, between the parties relating to the subject matters hereof are incorporated herein. No party hereto has relied upon any other promise, representation or warranty, other than those contained herein, in executing this Agreement.

As consideration for the agreement, Pro-Drive claims it paid $126,000.00 for the prototyping fee and $200,000.00 in licensing fees, plus additional amounts as the business venture continued. Pro-Drive claims in excess of $500,000.00 in damages as a result of Highland failing to deliver the contracted-for engine pursuant to its contract.

Pro-Drive's allegations reveal that the clear object of the contract was for Highland to produce a vertical shaft engine that Pro Drive would be able to distribute to its customers. During the ongoing relationship between the parties, the object of the Agreement never changed, despite numerous failed attempts by Highland to produce a workable engine. The additional monies claimed to be spent by Pro Drive is consistent with the terms of the Agreement, which called for "technical developmental assistance" to be provided by Highland, for which Pro Drive contracted to pay $175/hour. The ultimate goal of the contract, however, was the development of a usable engine for Pro-Drive, which Pro-Drive alleges was never produced by Highland. While the parties may have continued to engage in product development during the time they worked together in furtherance of the Agreement, and although

new engines were tested and deemed not usable, the undersigned concludes that the allegations in Pro-Drive's Complaint concerning these continuing negotiations fail to assert new, oral contracts.

In its Complaint, Pro-Drive specifically alleges:

¶ 101. Plaintiff PRO-DRIVE honored all of its commitments to Defendant HIGHLAND under the *Distribution Agreement* including payments in excess of $500,000, for which it received no return. (emphasis added)

¶ 102. Defendant Highland breached the *Distribution Agreement* by failing to produce a vertical shaft engine suitable for production and incorporation in a PRO-DRIVE outboard motor system. Plaintiff PRO-DRIVE suffered damages in excess of $500,000, for which it received no return. (emphasis added)

¶ 105. Defendants HIGHLAND and FITZPATRICK represented and continually promised that Defendant HIGHLAND could and would develop an engine suitable for use in a PRO-DRIVE outboard motor system. Plaintiff PRO-DRIVE relied on the representations of Defendants HIGHLAND and FITZPATRICK as to the ability of HIGHLAND to design, develop and manufacture the *contracted-for* outboard motor. In reliance on defendant's representations, Plaintiff PRO-DRIVE continued to pay Defendant HIGHLAND for the work that was never adequately performed or completed. (emphasis added)

¶ 106. Both Defendant HIGHLAND and Defendant FITZPATRICK continued to mislead Plaintiff PRO-DRIVE after the death of Malberg and the other HIGHLAND executives promising that HIGHLAND could produce the *contracted-for* motors. PRO-DRIVE relied to its detriment on these promises as suffered substantial damages. As a result of Defendants' actions, Plaintiff PRO-DRIVE suffered damages in excess of $500,000. (emphasis added)

¶ 108. Additionally, Defendants HIGHLAND and FITZPATRICK refused to make alterations, mend, remedy, or cure the defects in the design, manufacture, and delivery of special-type outboard motors, as

well as continuously misled Plaintiff PRO-DRIVE in regard to the project status and progress, the quality of workmanship, and the materials provided. (emphasis added)

¶ 109. These actions and promises of Defendants HIGHLAND and FITZPATRICK caused Plaintiff PRO-DRIVE to spend a considerable amount of time and money for which no benefit was gained or received. Continuous assurances by Defendants HIGHLAND and FITZPATRICK that a production model of a specially designed outboard motor was forthcoming induced Plaintiff PRO-DRIVE to spend substantial sums of money over the course of several years, while Defendants HIGHLAND and FITZPATRICK had no reasonable belief or intention of performing HIGHLAND's part of *the agreement* with Plaintiff PRO-DRIVE. The misrepresentations of Defendant HIGHLAND's technical and financial ability by Defendants HIGHLAND and FITZPATRICK were made with the intention to obtain an unjust advantage for Defendants HIGHLAND and FITZPATRICK or to cause a loss and inconvenience to Plaintiff PRO-DRIVE. (emphasis added)

¶ 110. Defendants HIGHLAND and FITZPATRICK intentionally misled Plaintiff PRO-DRIVE as to the design and manufacturing capabilities of Defendant HIGHLAND and as to the ability of Defendant HIGHLAND to perform and to produce an outboard motor engine suitable for the needs of Plaintiff PRO-DRIVE *as agreed.* (emphasis added)

¶ 111. Because Defendant HIGHLAND has failed to perform its duties and because the actions of Defendants HIGHLAND and FITZPATRICK further aggravated the situation by making continued promises to cure the defects or give remedy to Plaintiff PRO-DRIVE while knowing that HIGHLAND did not have the design, manufacturing, and production capabilities necessary for performance, the actions of Defendants HIGHLAND and FITZPATRICK were in bad faith and Defendants HIGLAND and FITZPATRICK are liable for all the damages, foreseeable or not, that are a direct consequence of Defendant HIGHLAND's bad faith *failure to perform as contemplated* by LA C.C. art. 1997. Therefore, Plaintiff PRO-DRIVE requests that this Court grant additional damages as against the Defendants. (emphasis added)

The allegations contained in Pro-Drive's Complaint all relate to Highland's failure to produce the "contracted-for" vertical engine contemplated under the terms of the Distribution Agreement. Additionally, every financial transaction complained of by Pro-Drive and all damages sought by Pro-Drive in the Complaint arise *in connection with* the Distribution Agreement. Allegations of breach of any oral contracts appear nowhere in Pro-Drive's Complaint and, in fact, are only asserted in response to Highland's motions. Thus, the claims that Pro-Drive has asserted in its Complaint – breach of the Distribution Agreement, detrimental reliance, and bad faith – all arise out of the purpose of the Distribution Agreement, which mandates that all claims be litigated in the state of Oklahoma.

Under well-established jurisprudence, the only inquiry before the Court at this time is the determination of whether the instant case presents exceptional circumstances that do not warrant transfer. Consideration of the public interest factors guides this Court's determination. These factors focus on the "factual connection" that a case has with the transferee venue and also with the transferor venue and include the existence of court congestion in either venue and the interest in having localized controversies decided at home. After consideration of these factors, the undersigned can identify no facts that would lead to a determination that the matter should not be transferred to Oklahoma. There is no evidence of court congestion in either this district or in the Western District of Oklahoma, such that one of the venues

would clearly trump from an administrative standpoint. Furthermore, although the plaintiff is located within the Western District of Louisiana, the plaintiff bargained for the forum of Oklahoma when it signed the Distribution Agreement, and Highland is located in neither Louisiana or Oklahoma, hence it will be traveling to either location to litigate this matter. Therefore, the public interest factors do not create exceptional circumstances that warrant circumventing the parties' forum selection clause.

As a final matter, none of the parties briefed the issue of whether and how a transfer of this matter would affect the remaining defendant in this lawsuit, John R. Fitzpatrick, III.[3] As the current CEO of Cruzani, Highland's successor business, this Court concludes the entirety of the case – including all claims against Mr. Fitzpatrick – are subject to transfer. There has been no argument made, and no evidence produced, that would show that the public interest factors weigh in favor of severing the claims alleged against Mr. Fitzpatrick, and having those claims proceed in this court while all other claims against Highland proceed in Oklahoma.

### *III. Conclusion*

For the foregoing reasons, Highland's Motion to Transfer Venue Pursuant to 28 U.S.C. §1404(a) [Doc. 16] is hereby **GRANTED** and this case is

---

[3] John R. Fitzpatrick has not yet made an appearance in this suit.

TRANSFERRED to the United States District Court for the Western District of Oklahoma.

This Order shall be **STAYED** for fourteen (14) days from the date of issuance. Any appeal to the District Judge must be filed within fourteen (14) days from the date of this Order. If an appeal is taken to the District Judge, this Order shall remain stayed until the appeal is decided. If no timely appeal is filed, the clerk shall transfer the action forthwith.

THUS DONE AND SIGNED this 23rd day of August, 2019 in Lafayette, Louisiana.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE