# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PRO-DRIVE OUTBOARDS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-19-834-J |
| | ) |
| CRUZANI, INC. F/K/A | ) |
| US HIGHLAND, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

Currently pending is Defendant Cruzani/Highland's[1] Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [Doc. No. 17]. For the reasons discussed below, the Court GRANTS the motion, and DISMISSES the claims against Defendant Cruzani/Highland with prejudice. Further, as Plaintiff and Defendant Cruzani/Highland have fully briefed the issues herein, and Defendant Cruzani/Highland's motion is equally effective in barring the claims against Defendant Fitzpatrick, the Court additionally DISMISSES the claims against Defendant Fitzpatrick with prejudice.

## I.     Background

As alleged in the Complaint, Plaintiff and Defendant Cruzani/Highland entered into a Distribution Agreement on January 12, 2010 wherein Defendant Cruzani/Highland agreed to create a prototyping engine and a hydraulic system for use on Plaintiff's outdoor motors. *See* Compl. at 2-6. Plaintiff and Defendant Cruzani/Highland worked together for several years but were unable to produce a workable prototype, and Defendant Cruzani/Highland's final attempt, on

---

[1] Plaintiff named Defendant as "CRUZANI, INC. F/K/A US HIGHLAND, INC." and refers to Defendant as "HIGHLAND" (Compl. at 1) [Doc. No. 1]. Defendant refers to itself as "Cruzani," (Def.'s Mot.) [Doc. No. 22 at 1], and the United States District Court for the Western District of Louisiana, Lafayette Division referred to Defendant as "Highland" [Doc. No. 40, at 1]. For clarification, this Court uses "Cruzani/Highland."

February 28, 2012, produced a prototype that was "unusable as failing to operate in the required manner." *Id.* at 7-18.

On September 21, 2018, Plaintiff filed the instant Complaint against Defendant Cruzani/Highland and Defendant John Fitzpatrick (Cruzani/Highland's CEO) in the United States District Court for the Western District of Louisiana, Lafayette Division, alleging breach of contract, detrimental reliance, and bad faith. *See id.* at 1, 18-19. Defendant Cruzani/Highland filed two motions in that court – one seeking transfer to this Court and one seeking dismissal based on statute of limitations. [Doc. Nos. 16-17]. The Western District of Louisiana granted the first motion, based on the Distribution Agreement's forum selection clause, and transferred the matter here – with Defendant Cruzani/Highland's pending motion to dismiss – on September 10, 2019. [Doc. Nos. 40, 41]. Plaintiff filed an affidavit of service for Defendant Fitzpatrick [Doc. No. 21] and the docket reflects an answer/response deadline of March 20, 2019, *see id.*, but Defendant Fitzpatrick has not answered or otherwise responded. Plaintiff has not moved for default judgment or otherwise attempted to prosecute the case against Defendant Fitzpatrick.

## II.   The Proper Construction of Defendant Cruzani/Highland's Motion

When Defendant Cruzani/Highland filed its motion to dismiss, it attached the relevant Distribution Agreement. *See* Def.'s Mot., Attach. 1. Plaintiff argues that the inclusion of the exhibit requires the Court to convert the motion into one for summary judgment (Pl.'s Resp., at 1) [Doc. No. 22]. The Court disagrees.

First, the Court notes that Defendant Cruzani/Highland does not rely on the Distribution Agreement in arguing the only issue currently before this Court – the statute of limitations. *See* Def.'s Mot., *passim*. Thus, the Court may rule on the Rule 12(b)(6) motion without consideration of the attached document.

Second, while "[g]enerally, the sufficiency of a complaint must rest on its contents alone," there are exceptions. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). That is, the Court may consider on a motion to dismiss "(1) documents the complaint incorporates by reference," "(2) documents referred to in the complaint if the documents are central to the plaintiff's claim, and the parties do not dispute the documents' authenticity," and "(3) matters of which a court may take judicial notice[.]" *Id.* (citations and internal quotation marks omitted). Here, Plaintiff referenced the Distribution Agreement in the Complaint, it is central to Plaintiff's claims (as discussed below), and Plaintiff does not dispute the documents' authenticity. Indeed, the Western District of Louisiana noted that "were it required to so find, this Court concludes the Distribution Agreement has been incorporated into the plaintiff's Complaint, as the Agreement is referenced throughout and is central to the plaintiff's claims in this matter." [Doc. No. 40].

For both reasons, the Court finds Defendant Cruzani/Highland's attachment of the Distribution Agreement does not require the Court to convert the motion to dismiss into one for summary judgment.

**III.   Analysis**

The Court now turns to Defendant Cruzani/Highland's motion to dismiss.

**A.   Standard of Review**

The Court should only dismiss a claim on the pleadings, based on the statute of limitations, if the affirmative defense appears plainly on the Complaint's face. *See Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018). Under such a review, the Court must accept all the well-pleaded allegations in the Complaint as true and must construe them in the light most favorable to Plaintiff. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### B.    Plaintiff's Allegations

Assuming Plaintiff's factual allegations are true:

- Plaintiff and Defendant Cruzani/Highland signed a Distribution Agreement in January 2010;

- A 950cc engine prototype was tested in May 2010 and was unsuccessful;

- In July 2010, the 950cc engine prototype was abandoned and work began on a 1150cc engine;

- In August 2010, Defendant Cruzani/Highland informed Plaintiff the 1150cc engine was available for production and that a conversion to a vertical shaft engine could begin in January 2011;

- In September 2010, Defendant Cruzani/Highland told Plaintiff more engineering was required on the vertical shaft engine and Plaintiff agreed to pay an additional $20,000.00;

- "Plaintiff PRO-DRIVE had very little communication from anyone from Defendant HIGHLAND after October 2010;"

- In February 2011, Plaintiff discovered Defendant Cruzani/Highland had "not being paying rent on the facility that they had been operating in" and "had been evicted;"

- A representative from Defendant Cruzani/Highland told Plaintiff that an engineer at SS Design Labs was attempting to convert the 1150cc engine to a vertical shaft engine and Plaintiff shipped the engineer an outboard motor in March 17, 2011;

- In April 2011, Defendant Fitzpatrick assured Plaintiff that Defendant Cruzani/Highland could have a 1150cc prototype by late 2011 and that production would start in "the early part of 2012;"

- In May 2011, Defendant Fitzpatrick assured Plaintiff the company could be "in production of complete engines in April 2012;"

- On May 2, 2011, Plaintiff learned that the engineer at SS Design Labs had never been paid to convert the 1150cc engine into a vertical shaft engine;

- From March 2011 to November 2011, Plaintiff paid SS Design Labs $54,000.00 to convert the 1150cc engine into a vertical shaft engine;

- In May 2011, Defendant Cruzani/Highland told Plaintiff it had only two 1150cc engines to use in the building of a prototype and lacked funding; consequently,

- "[i]n order to get the necessary engines needed to complete the work in the proposed timeframe project," Plaintiff purchased five 1150cc engines;

- The vertical shaft prototype tested in July 2011 was "complicated," performed poorly in testing, overheated, and would be "difficult to properly service;"

- Regardless, Defendant Fitzpatrick believed the company should "soon have a design freeze" which "alarmed" Plaintiff as the prototype "was in no way ready for production or even taking it out on the water any distance from a boat landing;"

- In September 2011, Plaintiff began paying two Defendant Cruzani/Highland technicians to work in Pro-Drive's Louisiana facility on the vertical shaft prototype;

- The technicians' progress was "slow," and in late November 2011, the technicians "left work at Plaintiff's" facility "without notice and did not return;"

- There was no further progress on the 1150cc engine development after November 2011;

- In January 2012, Plaintiff took "matters into its own hands" and ordered different parts and "decided to work directly on the development of the 1150cc engine;"

- In February 2012, Defendant Fitzpatrick delivered a second vertical shaft prototype to Plaintiff. During testing on February 28, 2012, "oil flowed onto the exhaust pipe, and the unit caught fire;" and,

- Defendant Cruzani/Highland never provided a suitable prototype for production.

Compl. at 6-18.

### C. Defendant Cruzani/Highland's Statute of Limitations Defense

Defendant Cruzani/Highland seeks dismissal based on the statute of limitations, correctly noting that in Oklahoma, the statute of limitations for a claim based on breach of contract is five years, and for a claim based on fraud is two years. *See* Def.'s Mot. at 3-4; *see also* Okla. Stat. tit. 12, § 95(A)(1), (3). For the latter, the statute of limitations began running on the date Plaintiff knew or should have known of the injury. *See id.*, § 95(A)(3); *see also Morgan v. State Farm Mut. Auto. Ins. Co.*, 377 F. Supp. 3d 1282, 1288 (W.D. Okla. 2019) (noting that the Oklahoma "discovery rule" applies to bad faith claims and that under such rule, "'limitations in tort cases

[are] tolled until the injured party knows or, in the exercise of reasonable diligence, should have known of the injury'" (citation omitted)).

According to Defendant Cruzani/Highland, it is clear from Plaintiff's allegations that its final failure to produce a suitable prototype was February 28, 2012 and thus the statute of limitations expired on February 28, 2014 (fraud claims) and February 28, 2017 (breach of contract claims). *See* Def.'s Mot. at 4. Plaintiff disagrees, arguing that it raised allegations "concerning fraud, misrepresentation, and detrimental reliance that have nothing to do with the subject matter of the Distribution Agreement" and that, in fact, the parties' subsequent meetings led to additional, oral contracts. Pl.'s Resp. at 3-5.

The Western District of Louisiana considered this same argument in ruling on the motion to transfer and rejected it. That court held, in relevant part:

> After a review of Pro-Drive's Complaint, the briefs of the parties, and the applicable law, the undersigned concludes all of Pro-Drive's claims arise in connection with the Distribution Agreement. The Distribution Agreement makes clear that the purpose of the agreement was for Pro-Drive to market, distribute, and sell the Highland 950cc V-Twin Engines, which included 750cc to 1200cc V-Twin engines. The Agreement further states:
>
>> The Manufacturer [Highland] shall provide technical developmental assistance for a minimum of three years after the release of any new version of the 950 Engine provided to the Distributor for general sales. The Manufacturer shall appoint one or more representatives to provide this assistance who shall be available within a reasonable time period (no more than five business days). Compensation for this service shall be billable at a rate of $175 per hour per person plus reasonable expenses.
>
> The Agreement further provides:
>
>> This Agreement constitutes and represents the entire agreement of the parties with respect to the subject matter hereof, and all other prior agreements, covenants, promises and conditions, verbal or written, between the parties relating to the subject matters hereof are incorporated herein. No party hereto has relied upon any other promise, representation or warranty, other than those contained herein, in executing this Agreement.

6

> As consideration for the agreement, Pro-Drive claims it paid $126,000.00 for the prototyping fee and $200,000.00 in licensing fees, plus additional amounts as the business venture continued. Pro-Drive claims in excess of $500,000.00 in damages as a result of Highland failing to deliver the contracted-for engine pursuant to its contract.
>
> Pro-Drive's allegations reveal that the clear object of the contract was for Highland to produce a vertical shaft engine that Pro-Drive would be able to distribute to its customers. During the ongoing relationship between the parties, the object of the Agreement never changed, despite numerous failed attempts by Highland to produce a workable engine. The additional monies claimed to be spent by Pro-Drive is consistent with the terms of the Agreement, which called for "technical developmental assistance" to be provided by Highland, for which Pro-Drive contracted to pay $175/hour. The ultimate goal of the contract, however, was the development of a usable engine for Pro-Drive, which Pro-Drive alleges was never produced by Highland. While the parties may have continued to engage in product development during the time they worked together in furtherance of the Agreement, and although new engines were tested and deemed not usable, the undersigned concludes that the allegations in Pro-Drive's Complaint concerning these continuing negotiations fail to assert new, oral contracts.
>
> . . .
>
> The allegations contained in Pro-Drive's Complaint all relate to Highland's failure to produce the "contracted-for" vertical engine contemplated under the terms of the Distribution Agreement. Additionally, every financial transaction complained of by Pro-Drive and all damages sought by Pro-Drive in the Complaint arise *in connection with* the Distribution Agreement. Allegations of breach of any oral contracts appear nowhere in Pro-Drive's Complaint and, in fact, are only asserted in response to Highland's motions. Thus, the claims that Pro-Drive has asserted in its Complaint – breach of the Distribution Agreement, detrimental reliance, and bad faith – all arise out of the . . . the Distribution Agreement . . . .

[Doc. No. 40, at 7-11 (emphasis added in Order)].

Having examined Plaintiff's Complaint, the Court reaches the same conclusion and finds Plaintiff's breach of contract and fraud claims arise solely from the Distribution Agreement.[2]

---

[2] Plaintiff would be in no better position even if the Court found otherwise. That is, in Oklahoma, the statute of limitations for breach of an oral contract is three years. *See* Okla. Stat. tit. 12, § 95(A)(2). Plaintiff does not dispute that the last prototype failure occurred on February 28, 2012 and the Complaint contains no allegations that Defendant Cruzani/Highland took any further action or engaged in any communication thereafter. So, even if the parties formed multiple oral

7

In sum, the Court finds no allegations that any conduct or communication occurred after February 28, 2012 and even Plaintiff concedes that under Oklahoma law "those claims of Pro-Drive arising under the Distribution Agreement – for which Pro-Drive paid $200,000.00 and received nothing – would be time-barred." Pl.'s Resp. at 6.  Accordingly, the Court finds that the statute of limitations expired on February 28, 2014 (fraud claims) and February 28, 2017 (breach of contract claims).  As Plaintiff did not file the Complaint until September 21, 2018, the Court DISMISSES the claims against Defendant Cruzani/Highland with prejudice.

### IV. The Effect of the Court's Ruling on Defendant Fitzpatrick

The claims against Defendant Fitzpatrick – to the extent they can even be identified as against him – are entirely intertwined with those against Defendant Cruzani/Highland.  *See* Compl., *passim*.  Further, the parties have completely briefed the statute of limitations issues, and the Court's ruling would apply with equal force to the claims against Defendant Fitzpatrick.  Under these unique circumstances, the Court sua sponte DISMISSES the claims against Defendant Fitzpatrick with prejudice.  *See Rosser v. Chrysler Corp.*, 864 F.2d 1299, 1304 (7th Cir. 1988) (affirming a district court's granting dismissal, sua sponte, to nonmoving defendants where the "nonmoving defendants are in a position similar to that of moving defendants or where the claims against all the defendants are integrally related"); *Sheldon v. Vermonty*, No. 98-2277-JWL, 1999 WL 1096043, at *3 (D. Kan. Nov. 29, 1999) ("the court finds it appropriate to dismiss plaintiff's claims as to the non-moving defendants for the same reasons and in the same manner as dismissal was granted in favor of [the moving] defendants").

---

contracts, the allegations in the Complaint show those contracts were breached on February 28, 2012 at the latest and any claims relating to them would have expired on February 28, 2015.

## V.       Conclusion

Based on the foregoing, Defendant Cruzani/Highland's motion to dismiss [Doc. No. 17] is GRANTED and Plaintiff's claims against Defendant Cruzani/Highland and Defendant Fitzpatrick are DISMISSED with prejudice.  A separate judgment shall be entered.

IT IS SO ORDERED this 24th day of February, 2020.

BERNARD M. JONES
UNITED STATES DISTRICT JUDGE